IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re BUSINESS OBJECTS S.A. SECURITIES LITIGATION, | No. C 04-2401 MJJ |
| This Document Relates To:<br><br>ALL ACTIONS | **ORDER GRANTING DEFENDANTS' 12(b)(6) MOTION TO DISMISS** |

## INTRODUCTION

Before the Court is Businesss Objects, Bernard Liautaud, James Tolonen, and John Olsen's ("Defendants") Motion to Dismiss a federal securities fraud action brought against them by a class consisting of all purchasers of Business Objects' stock ("Plaintiffs") between April 23, 2003 and April 29, 2004 (the "Class Period"). Defendants seek an Order dismissing the Consolidated Class Action Complaint ("Complaint") with prejudice under the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA") and pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendants' motion is **GRANTED** with leave to amend.

## FACTUAL ALLEGATIONS

This motion arises from an Amended Complaint filed against all Defendants alleging securities fraud in violation of section 10(b) and 20(a) of the Securities Exchange Act. The allegations of Plaintiffs' complaint relate to Business Objects' announcement on April 29, 2004, which disclosed its financial results for the first quarter of 2004 and its forecast its returns for the June 2004 quarter. In 2003, Business Objects enjoyed revenue growth, reporting revenue of $118.5

1  million, $129 million and $129.1 million for the first three quarters of 2003, respectively. On
2  December 11, 2003, Business Objects announced it had completed its acquisition of Crystal
3  Decisions, Inc., a private Canadian company also in the business intelligence market.
4       On February 8, 2004, Business Objects reported revenue of $184.2 million for the December
5  2003 quarter. The same day Business Objects reported its results, it also projected revenue of $208
6  to $218 million and earnings per share ("EPS") of $0.03 to $0.09 (GAAP) and $0.10 to $0.16 (non-
7  GAAP) for the March 2004 quarter. On April 29, 2004, Business Objects reported its financial
8  results for the March 2004 quarter. Business Objects earned revenue of $217 million and EPS of
9  $0.04 (GAAP) and $0.10 (non-GAAP). In the same release, Business Objects also gave guidance
10 for its June 2004 quarter in the range of $220 to $225 million, which was weaker than securities
11 analysts had anticipated. Several securities analysts expressed disappointment with Business
12 Objects' June 2004 guidance and lowered their own forecast in response.
13      On April 30, 2004, the day the analyst reports were issued, Business Objects stock price
14 declined from $28.58 to $21.92. Business Objects ended up reporting revenue of $222.2 million for
15 the June 2004 quarter.
16      On May 4, 2004, Business Objects filed its quarterly report on Form 10-Q for the March
17 2004 quarter. In the Form 10-Q, Business Objects disclosed that the SEC had commenced an
18 informal inquiry into its backlog practices. The 10-Q stated, "[w]hile we believe our practices are
19 proper and in accordance with generally accepted accounting principles in the United States, we can
20 give no assurance as to the outcome of this inquiry." Three months later, Business Objects disclosed
21 that it had received a "Wells" notice[1] from the SEC and that it believed the SEC's inquiry related to
22 the fact that Business Objects "does not disclose its backlog of unshipped orders."

### LEGAL STANDARDS

**A.  Rule 12(b)(6)**

A court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for either lack of a cognizable legal theory or the pleading of insufficient facts under an adequate theory.

---

[1] A "Wells" notice refers to the notice provided by the SEC when a decision has been made to recommend to the Commission that a civil action be initiated against an issuer.

2

1  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984).  When deciding
2  upon a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to
3  FRCP 12(b)(6), a court must take all of the material allegations in the plaintiff's complaint as true,
4  and construe them in the light most favorable to plaintiff.  *Parks School of Business, Inc. v.*
5  *Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Moreover, a complaint should not be dismissed
6  unless a plaintiff could prove no set of facts in support of his claim that would entitle him to relief.
7  *Id.*

8       In the context of a motion to dismiss, review is limited to the contents in the complaint.
9  *Allarcom Pay Television, Ltd. v. General Instrument Corp.*, 69 F.3d 381, 385 (9th Cir. 1995).  When
10 matters outside the pleading are presented to and accepted by the court, the motion to dismiss is
11 converted into one for summary judgment.  Where such a conversion takes place, all parties must be
12 given an opportunity to present all material made pertinent to such a motion by Rule 56.  *In re*
13 *Pacific Gateway Exchange, Inc. Sec. Lit.*, 169 F. Supp. 2d 1160, 1164 (N.D. Cal. 2001); *see also*
14 Fed. R. Civ. P. 12(b).  However, matters properly presented to the court, such as those attached to
15 the complaint and incorporated within its allegations, may be considered as part of the motion to
16 dismiss.  *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir.
17 1989).

18      Where a plaintiff fails to attach to the complaint documents referred to in it, and upon which
19 the complaint is premised, a defendant may attach to the motion to dismiss such documents in order
20 to show that they do not support plaintiff's claim.  *See Pacific Gateway Exchange*, 169 F. Supp. 2d
21 at 1164; *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Thus, the district court may consider
22 the full texts of documents that the complaint only quotes in part.  *See In re Stay Electronics Sec.*
23 *Lit.*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996).  This rule precludes the plaintiffs "from surviving a
24 Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are
25 based."  *Parrino v. FHP, Inc.*, 146 F.3d 699, 705 (9th Cir. 1998).

26     **B.**    **Section 10(b) and Rule 10b-5**

27      Section 10(b) of the Securities Exchange Act ("Exchange Act") provides, in part, that it is
28 unlawful "to use or employ in connection with the purchase or sale of any security registered on a

3

1  national securities exchange or any security not so registered, any manipulative or deceptive device
2  or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C.
3  § 78j(b).

4      Rule 10b-5 makes it unlawful for any person to use interstate commerce

5      (a)    To employ any device, scheme, or artifice to defraud.
    (b)    To make any untrue statement of material fact or to omit to state a material fact
6  necessary in order to make the statements made, in the light of the circumstances under
which they were made, not misleading, or
7      (c)    To engage in any act, practice, or course of business which operates or would
operate as a fraud or deceit upon any person, in connection with the purchase or sale of any
8  security.

9  17 C.F.R. § 240.10b-5

10      To be actionable under section 10(b) and Rule 10b-5, a plaintiff must allege: 1) a
11  misrepresentation or omission; 2) of material fact; 3) made with scienter; 4) on which the plaintiff
12  justifiably relied; 5) that proximately caused the alleged loss. *See Binder v. Gillespie*, 184 F.3d
13  1059, 1063 (9th Cir. 1999). Additionally, as in all actions alleging fraud, plaintiffs must state with
14  particularity the circumstances constituting fraud. FED. R. CIV. P. 9(b).

15      **C.**    **Section 20(a)**

16      Section 20(a) of the Exchange Act provides derivative liability for those who control others
17  found to be primarily liable under the Act. *In re Ramp Networks, Inc. Sec. Lit.*, 201 F. Supp. 2d
18  1051, 1063 (N.D. Cal. 2002). Where a plaintiff asserts a section 20(a) claim based on an underlying
19  violation of section 10(b), the pleading requirements for both violations are the same. *Id.*

20      **D.**    **Private Securities Litigation Reform Act**

21      In 1995, Congress enacted the PSLRA to provide "protections to discourage frivolous
22  [securities] litigation." H.R. Conf. Rep. No. 104-369, 104th Cong., 1st Sess. at 32 (Nov. 28, 1995).
23  The PSLRA strengthened the pleading requirements of Rules 8(a) and 9(b). Actions based on
24  allegations of material misstatements or omissions under the PSLRA must "specify each statement
25  alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an
26  allegation regarding the statement or omission is made on information and belief, the complaint shall
27  state with particularity all facts on which that belief is formed." 15 U.S.C. §78u-4(b)(1).

28      The PSLRA also heightened the pleading threshold for causes of action brought under

4

1  Section 10(b) and Rule 10b-5.  Specifically, the PSLRA imposed strict requirements for pleading
2  scienter.  A complaint under the PSLRA must "state with particularity facts giving rise to a strong
3  inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  The
4  Ninth Circuit, in interpreting the PSLRA, has held that "a private securities plaintiff proceeding
5  under the [PSLRA] must plead, in great detail, facts that constitute strong circumstantial evidence of
6  deliberately reckless or conscious misconduct."  *In re Silicon Graphics Inc.*, 183 F.3d 970, 974 (9th
7  Cir. 1999).  If the complaint does not satisfy the pleading requirements of the PSLRA, upon motion
8  by the defendant, the court must dismiss the complaint.  *See* 15 U.S.C. §78u-4(b)(1).

## ANALYSIS

### A.    Rule 8

Defendants argue that the complaint does not meet the requirements of Rule 8 of the Federal Rules Civil Procedure because of the "puzzle-style" nature of the Plaintiffs' allegations.  Rule 8 requires that a plaintiff provide a "short and plain statement" describing why the plaintiff is "entitled to relief."  The Court notes that the complaint often quotes the entire text of public documents and rarely gives an indication as to which statements are being challenged and why.  However, the Court declines to take the drastic step of dismissal based on the form of the pleading.  Instead, the Court joins the approach of other courts in this district and will attempt to "glean the complaint," focusing on those statements that are in bold and italicized.  *See In re Northpoint Communications Group, Inc.*, 184 F. Supp. 2d 991, 998 (N.D. Cal. 2001); *In re Cornerstone Propane Partners, L.P. Securities Litigation*, 355 F. Supp. 2d 1069, 1081 (N.D. Cal. 2005).

### B.    Falsity and Scienter

In order to support their claims under the PLSRA, Plaintiffs must first specify a "statement alleged to have been misleading."  15 U.S.C. § 78u-4(b)(1).  Additionally, in order to avoid having their action dismissed, Plaintiffs must "plead with particularity either the alleged misleading statements or scienter[.]"  *In re Fritz Cos. Sec. Litig.*, 282 F. Supp. 2d 1105, 1112 (N.D. Cal 2003). The Ninth Circuit has articulated the rule as follows:

> Because falsity and scienter in private securities fraud cases are generally strongly inferred from the same set of facts, we have incorporated the dual pleading requirements of 15 U.S.C. §§ 78u-4(b)(1) and (b)(2) into a single inquiry.  In considering whether a

5

> private securities fraud complaint can survive dismissal under Rule 12(b)(6), we must determine whether particular facts in the complaint, taken as a whole, raise a strong inference that defendants intentionally or [with] deliberate recklessness made false or misleading statements to investors. Where pleadings are not sufficiently particularized or where, taken as a whole, they do not raise a strong inference that misleading statements were knowingly or [with] deliberate recklessness made to investors, a private securities fraud complaint is properly dismissed under Rule 12(b)(6).

*Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001) (citations and internal quotation marks omitted).

Plaintiffs allegations rely primarily upon 1) Defendants' statements regarding the purported successful integration of Crystal Decisions, and 2) Defendants' improper recognition of revenue in financial statements. To satisfy the necessary scienter requirement, Plaintiffs rely upon confidential witness statements, stock sales, an SEC investigation, and the temporal proximity between Defendants' alleged misrepresentations and the disclosure of the truth.

### 1. Crystal Decisions Integration

Plaintiffs allege that Defendants made several material misrepresentations regarding the acquisition and integration of Crystal Decisions. However, while Plaintiffs' complaint contains pages of text from Defendants' press releases and analyst calls, Plaintiffs quote only two allegedly false statements in their briefing to the Court. First, on July 18, 2003, Defendants issued a press release discussing the complimentary natures of the merging companies' product lines and its ability to "capitalize on significant growth opportunities resulting from complementary products."[2] Plaintiffs also note Defendant Liautaud's statement on October 23 that "[o]ur management had been working closely with counterparts from Crystal Decisions in a disciplined process to develop integration plans that can be implemented on closing." Plaintiffs also note that on October 23, 2003, Defendants' press release stressed that Enterprise 6 was the absolute key to Business Objects growth, and, according to Plaintiffs, highlighted that the integration of Crystal Decisions was progressing smoothly. On December 11, 2003, January 8, 2004, and February 5, 2004, Plaintiffs allege that Defendants issued press releases stating that the integration of Crystal Dynamics had progressed smoothly and that Business Objects would achieve significant growth based on the

---

[2] At oral argument, Plaintiffs indicated that they no longer rely on this statement in pressing their complaint.

6

1   companies' complementary product lines.  Plaintiffs argue that each of the press releases was false
2   because Defendants knew that serious integration problems with the companies' product lines
3   existed, including the incompatibility of Enterprise 6, and that it had plans to replace the product
4   with Crystal Enterprise.

5       Defendants argue that Plaintiffs have not alleged facts demonstrating that the press releases
6   or Defendant Liautaud's statement were false when made.  Defendants note that the integration
7   effort involving Crystal Decisions did not begin until December 11, 2003, and therefore the Court
8   must only look to statements made after that time.  Defendants assert that only two statements could
9   possibly support Plaintiffs' claim: 1) the January 8, 2004 announcement that the two companies'
10  sales, marketing, professional services, alliances, technical support organizations, and websites "are
11  now one"; and 2) the February 5, 2004 press release in which Defendant Liautaud said he was
12  "pleased" with the progress of the integration efforts to date.

13      Plaintiffs respond that the Amended Complaint adequately details the manner in which
14  Defendants made material representations regarding the acquisition and integration of Crystal
15  Decisions.  Plaintiffs rely almost exclusively on the testimony of its three confidential witnesses.
16  Initially, the Amended Complaint states that a former Business Objects Senior Director of Customer
17  Technical Support, who worked at the company during the Class Period, knew that customer orders
18  were being delayed and cancelled because of product integration problems between Crystal
19  Decisions and Business Objects.   The Amended Complaint also states that a former
20  Telecommunications Analyst Project Manager who worked at Crystal Decisions confirmed that
21  when the acquisition of the two companies was announced, teams from the two companies were not
22  allowed to integrate or even share information.  Additionally, the Amended Complaint states that a
23  former Vice President of Product Strategy of Business Objects stated that product coordination and
24  product overlap became an important issue for the integrated company.

25       The Ninth Circuit has warned against the use of unnamed sources and stated that "[i]t is not
26  sufficient for a plaintiff's pleadings to set forth a belief that certain unspecified sources will reveal,
27  after appropriate discovery, facts that will validate her claim."  *Silicon Graphics*, 183 F.3d at 985.
28  "Instead, to meet this particularity requirement for personal sources of information, this circuit has

7

applied the Second Circuit's standard that personal sources of information relied upon in a complaint should be described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *In re Daou Systems, Inc. Sec. Litig.*, 397 F.3d 704, 711 (9th Cir. 2005) (internal quotation marks and citations omitted) (*amended and superseded on denial of rehearing by* 411 F.3d 1006 (9th Cir. 2005)). "When plaintiffs rely on both confidential witnesses and on other facts, 'they need not name their sources as long as the latter facts provide an adequate basis for believing that the defendants' statements were false.'" *Id*. (quoting *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000)); *see also Silicon Graphics*, 183 F.3d at 985 (stating that the complaint should include "adequate corroborating details").

In *Dauo Systems*, the plaintiffs had numbered each confidential witness, described his or her job description and responsibilities, and in some instances, provided the witnesses' exact title and to which executive the witnessed reported. 397 F.3d at 711. The *Dauo Systems* court found that the specificity of the plaintiffs' descriptions was sufficient to met the PSLRA's requirements for confidential witnesses. *Id* at 712.

Here, the Court finds that the Amended Complaint has failed to describe the confidential witnesses with a sufficient degree of specificity. Indeed, unlike in *Dauo Systems*, the Amended Complaint provides no more than the job title of the confidential witnesses. For example, plaintiffs state the exact job title of their first confidential witness – the Senior Director of Customer Technical Support – but fail to provide any other detail regarding his or her job description and responsibilities. *See Northpoint*, 184 F. Supp. 2d at 1000 (finding the confidential-witness statements insufficient where the description of the confidential witnesses did not provide their job duties and how the witnesses learned of the information alleged in the complaint). Plaintiff treats the other two confidential witnesses in a similar manner. Moreover, besides the statements of these three confidential witnesses, Plaintiffs have offered the Court no corroborating evidence, such as internal documents or public filings, to support their assertions of falsity.

However, even if, *assuming arguendo*, the Court found that Plaintiffs had described the confidential witnesses with sufficient specificity, the witness statements are long on speculation, but

8

short on relevant detail. The witnesses' conclusory statements include phrases such as "product integration problems" and "customer confusion," but offer no insight into the pervasiveness of such problems. Furthermore, the witnesses statements offer no detail regarding how the witnesses learned of the facts in their statements or how, if at all, Defendants knew about such facts. In short, these allegations are not pled with sufficient specificity.

### 2.     Financial Statements

Plaintiffs allege that during the Class Period, Defendants improperly recognized revenue in violation of Generally Accepted Accounting Principles ("GAAP") and other accounting standards, which made Business Objects' financial statements false and misleading. In support of these allegations, Plaintiffs rely primarily upon a confidential witness statement and the SEC's formal ongoing investigation into Business Objects' accounting principles. Defendants contend that Plaintiffs have failed to adequately allege that their economic losses were caused by the allegedly false statements, and in any event, Plaintiffs have also failed to allege with particularity that Business Objects recognized revenue improperly on account of these practices.

Plaintiffs rely almost exclusively upon an unspecified former Senior Director's statement that the Vice President of Business Objects Alliance Group admitted that some sales were not recorded in the quarter in which they were made. Plaintiffs also allege that, in another case, "an employee" met with "defendant" and Chief Operating Officer John Olsen to insist that an IBM order be shipped before the end of the quarter, rather than in the following quarter, and that Business Objects ended up making the shipment by the end of the quarter but did not recognize the revenue until the following quarter.

Defendants respond that the former Senior Director's account lacks particularized details regarding the alleged accounting violations. It is generally accepted that allegations of violations of GAAP or SEC regulations, without mor do not establish scienter. *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1426 (9th Cir. 1994). Rather, to plead fraudulent intent based on GAAP violations, plaintiffs must allege facts showing that 1) specific accounting decisions were improper, and 2) defendants knew specific facts at the time that rendered their accounting determinations fraudulent. *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 390-91 (9th Cir. 2002).

Plaintiffs have not met this standard.

The Senior Director's statement that "some sales were not recorded in the quarter in which they were made" is vague and conclusory.  The Court is left to speculate as to the date, sales quantity, and other relevant details regarding the transaction.  Plaintiffs allegation regarding the IBM order suffers from the same flaw.  The allegation is unsupported by facts showing any specifics regarding the transaction, for example, how this employee learned whether revenue was recognized on the IBM order, when the revenue was recognized, and whether the revenue recognition was improper.  *See Northpoint*, 184 F. Supp. 2d at 998 ("With accounting fraud, however, the necessary scienter is in general not established merely by the publication of inaccurate accounting figures, or failure to follow generally accepted accounting principles.  More is needed.").  Furthermore, Plaintiffs fail to plead that Defendants had any knowledge of Business Objects' accounting practices, or that such practices were improper.  In sum, such generic allegations of accounting fraud fall woefully short of sufficiently pleading scienter with respect to Defendants' practice of recognizing revenue.

Moreover, the Court is not persuaded that Plaintiffs' improper revenue allegations are further evidenced by the SEC's formal investigation into Business Objects' accounting practices.  Plaintiffs assertion that the SEC's investigation "highlights the risk" that Business Objects has improperly recognized revenue is problematic.  Certainly, the existence of a "risk" that Business Objects has committed GAAP violations, without more, is insufficient to raise a "strong inference" of scienter.  Plaintiffs have offered no case authority to the contrary.

### 3.  Stock Sales

Plaintiffs also rely on stock sales by Defendant Liautaud to support their allegations of scienter.  Generally, stock sale allegations cannot raise an inference of scienter unless Plaintiffs allege specific facts showing that the sales were "dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information." *Silicon Graphics*, 183 F.3d at 986.  Among the relevant factors for a court to consider are: 1) the amount and percentage of shares sold by insiders; 2) the timing of the sales; and 3) whether the sales were consistent with the insider's prior trading history.  *Id.*

1    Liautaud sold over $6 million of stock during the class period, roughly 9.7% of his total
2 stockholdings.  Liautaud's sales occurred soon after the Business Objects's quarterly earnings
3 reports.  In light of the *Silicon Graphics* factors, these sales are not sufficiently suspicious to raise an
4 inference of scienter.  To be certain, the fact that Liataud sold roughly 9.7% of his total
5 stockholdings is not particularly powerful evidence of fraud.  *See Ronconi*, 253 F.3d at 435
6 (suggesting that sales of 10-17% of holdings was not suspicious).  Moreover, the timing of the stock
7 sales are not overly suspicious and Plaintiffs have failed to explain how these sales, each of which
8 occurred after Business Objects announced earnings results, could raise an inference of fraudulent
9 intent. Additionally, any inference of scienter is further negated by the fact that neither Defendant
10 Tolonen nor Defendant Olsen sold any shares during the Class Period.  *See Lipton v. Pathogenesis*
11 *Corp.*, 284 F.3d 1027, 1037 (9th Cir. 2002) (finding that insider sales did not support an inference of
12 fraud when "only [one defendant] and not other insiders sold during the class period, and the sales
13 by [the one defendant] were only a small part of his total holdings").  Therefore, the Court finds that
14 Liautaud's stock sales do not support an inference of scienter.

15 **4.    Proximity Between False Statements and Disclosure of the Truth**

16    Plaintiffs argue that the close proximity between Defendants' misrepresentations and the
17 disclosure of the truth helps bolster a strong inference of scienter.  Here, Plaintiffs allege that
18 Defendants' statements in October 2003 through December 2003 regarding the integration of Crystal
19 Decisions were revealed to be fundamentally incorrect and misleading in Business Objects' April
20 29, 2004 press release.  Plaintiffs' argument fails, as an initial matter, because as previously noted,
21 Plaintiffs' have not sufficiently alleged that Business Objects' April 29, 2004 press release was false
22 or misleading.  Moreover, a showing of "temporal proximity . . . without more, is insufficient to
23 satisfy Rule 9(b)."  *Yourish v. California Amplifier*, 191 F.3d 983, 997 (9th Cir. 1999); *see also*
24 *Ronconi*, 253 F.3d at 437 (holding that "the five week period between the optimistic statements and
25 the below-expectations earning report is not enough to sustain the complaint.").[3]

---

27    [3]Plaintiffs' argument that scienter may also be inferred because Defendants' allegedly fraudulent
28 conduct concerned Business Objects' core business is similarly unpersuasive. *See In re Read-Rite Corp. Sec. Litig.*, 335 F.3d 843, 848 (9th Cir. 2003) (rejecting the notion that a strong inference of scienter can be presumed from allegations that relate to a company's core operations).

11

### D.  Allegations as a Whole

The Court must consider whether the totality of the Complaint's allegations, even though individually lacking, create a strong inference that the individual Defendants acted with deliberate or conscious recklessness. *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*, 320 F.3d 920, 945 (9th Cir. 2003) (holding that the allegations must be considered in their totality in determining whether plaintiffs have met the PSLRA standard). To satisfy the Ninth Circuit's interpretation of the PSLRA, Plaintiffs' allegations must give rise to a strong inference of deliberate recklessness, "provid[ing] a list of all relevant circumstances in great detail." *Silicon Graphics*, 183 F.3d at 974. The complaint here does no such thing. Even after considering the totality of Plaintiffs' allegations, the Court finds that Plaintiffs' complaint, as present written, is filled with imprecision and falls woefully short of the *Silicon Graphics* standard. Plaintiffs have failed to allege particularized facts that could lead the Court to infer that Defendants knowingly misrepresented the details of Crystal Decision's integration or Business Objects' revenue reports. Therefore, where, as here, a securities fraud complaint "requires a laborious deconstruction and reconstruction of a great web of scattered, vague, redundant and often irrelevant allegations," the spirit and letter of the PSLRA support dismissal. *Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1243 (N.D. Cal. 1998).[4]

### E.  Loss Causation

In *Dura Pharmaceuticals, Inc. v. Broudo*, 125 S.Ct. 1627 (2005), the Supreme Court clarified that alleging that a misrepresentation caused an inflated purchase price does not, without more, demonstrate loss causation. To "touch upon" an economic loss is insufficient; plaintiffs must demonstrate an actual causal connection between the defendant's material misrepresentation and the economic loss suffered. *Id*. at 1633. This holding reversed the Ninth Circuit's jurisprudence on the subject which held that a plaintiff can satisfy the loss causation requirement simply by alleging that a security's price at the time of purchase was inflated due to the misrepresentation.

Here, the complaint simply alleges that "Plaintiffs and the class have suffered damages in

---

[4] Since Plaintiffs have not met the PSLRA pleading standard, the Court does not need to decide whether Defendants' allegedly false statements fall within the safe harbor provision under 15 U.S.C. § 78u-5(c)(1)(A) or (B).

12

that, in reliance on the integrity of the market, they paid inflated prices for Business Objects publically traded securities." Plaintiffs have not alleged a proximate, casual connection between the alleged misrepresentation and the subsequent decline in their stock. Therefore, as in *Dura*, Plaintiffs' allegations regarding loss causation are insufficient.

**F.     Rule 20(a) Liability**

Section 20(a) of the Exchange Act provides derivative liability for those who control others found to be primarily liable under the Act. *In re Ramp Networks, Inc. Sec. Lit.*, 201 F. Supp. 2d 1051, 1063 (N.D. Cal. 2002). Where a plaintiff asserts a section 20(a) claim based on an underlying violation of section 10(b), the pleading requirements for both violations are the same. *Id.*

Here, Plaintiffs assert that the individual Defendants are liable under this section because of an underlying violation of section 10(b). However, because Plaintiffs have failed to adequately plead the underlying 10b-5 violation, the section 20(a) claims must be dismissed as well.

**G.     Dismissal Without Prejudice**

Leave to amend under Federal Rule of Civil Procedure 15 should be liberally granted. "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." *Eminence Capital v. Aspeon Inc.*, 316 F.3d 1048, 1053 (9th Cir. 2003) (error to refuse leave to amend in a securities fraud case to allow plaintiff to plead scienter). Here, it is possible that Plaintiffs could remedy their significant pleading defects in an amended complaint by adding detailed factual support for their allegations of false or misleading statements, and demonstrating that Defendants had the requisite scienter at the time the statements were made. Accordingly, the Court dismisses the Amended Complaint without prejudice. The Plaintiffs should file an amended complaint within thirty (30) days from the date of this Order.

## CONCLUSION

After consideration of the Amended Complaint in light of the heightened pleading standards of the PSLRA and the requirements of Federal Rule of Civil Procedure 12(b)(6), the Court **GRANTS** Defendants' motion to dismiss with leave to amend.

**IT IS SO ORDERED.**

United States District Court
For the Northern District of California

1  Dated: July__27___, 2005

          */s/ Martin J. Jenkins*
2
          MARTIN J. JENKINS
3            UNITED STATES DISTRICT JUDGE